O     JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| EXPORT-IMPORT BANK OF THE UNITED STATES | ) ) ) | Case No. CV 09-2930 CAS (PLAx) |
| Plaintiffs, | ) ) | **ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| vs. | ) ) ) | |
| UNITED CALIFORNIA DISCOUNT CORP. DBA UNITED NEVADA TRADE INTERNATIONAL, DBA UNITED CALIFORNIA FACTORS, AND DBA UNITED CALIFORNIA TRADE FINANCE | ) ) ) ) ) ) | (filed July 16, 2010 and July 30, 2010) |
| Defendants. | ) | |

_____

I.     INTRODUCTION

On April 27, 2009, plaintiff Export-Import Bank of the United States ("Ex-Im") filed the instant action against defendant United California Discount Corp. dba United Nevada Trade International, dba United California Factors, and dba United California Trade Finance ("UCDC") alleging claims for: (1) wrongful dishonor of standby letters of credit; (2) breach of contract; and (3) unjust enrichment.

On July 16, 2010 and July 30, 2010, defendant and plaintiff respectively filed the instant cross-motions for summary judgment. On July 26, 2010 and August 9, 2010, the

parties filed their oppositions.  On August 2, 2010 and August 16, 2010, the parties filed their replies.  A hearing was held on August 30, 2010, and the motion was taken under submission.  After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff is a corporation organized and existing under federal law as an agency of the United States of America created pursuant to 12 U.S.C. § 635.  Ex-Im's Statement of Uncontroverted Facts ("ESUF") ¶ 1.  Defendant is a California corporation with its principal place of business in Redondo Beach in Los Angeles County.  Complaint ¶ 4.

Plaintiff is the official export credit agency of the United States, and it offers various financial products, including working capital loan guarantees.  ESUF ¶¶ 1–2.  Under its working capital guarantee program, plaintiff guarantees loans made by private commercial lenders to U.S. exporters to facilitate the export of goods or services.  ESUF ¶ 2.  Should the exporter default, the guaranteed lender can file a claim with plaintiff for payment under the guarantee.  ESUF ¶¶ 2–3.  Plaintiff then pays the private lender under the terms of the guarantee, and the lender assigns its rights to the debt to plaintiff.  ESUF ¶ 3.

This suit involves a transaction approved under the working capital guarantee program for UPS Capital Business Credit f/k/a/ First International Bank ("UPS") to provide a loan to Ashford International, Inc. ("Ashford"), an American company based in Atlanta, Georgia, in support of a contract for the sale of computers and related services with the Ministry of Education ("MOE") of the Kingdom of Jordan.  ESUF ¶ 4.  On or about January 27, 2000, Ashford entered into a credit agreement with UPS whereby UPS agreed to extend a revolving line of credit to Ashford of up to $3 million.  ESUF ¶ 5.  Ashford also executed an Export Revolving Loan Promissory Note (the "Note") and a Corporate Guaranty in favor of UPS.  ESUF ¶ 5.

Sometime thereafter, UPS commenced loan work-out procedures with Ashford, in

consultation with plaintiff.[1]  ESUF ¶ 7.  As part of the restructuring, UPS issued two standby letters of credit (the "UPS LOCs") to support Ashford's contract with the MOE.  ESUF ¶ 7.  As a condition of UPS issuing the UPS LOCs, Ashford was required to obtain two standby letters of credit for the benefit of UPS in amounts at least equal to the UPS LOCs.[2]  ESUF ¶ 7.  Defendant, pursuant to a request by Ashford, issued two standby letters of credit (the "UCDC LOCs") on September 20, 2001, for $330,104.80 each.  UCDC's Statement of Uncontroverted Facts ("USUF")  ¶¶ 1-2, 4.  UPS was the stated beneficiary for each of the UCDC LOCs.  USUF ¶¶ 3, 5.

Each of the UCDC LOCs issued on September 20, 2001, contains the following demand term:

1. BENEFICIARY STATEMENT READING AS FOLLOWS:

THE AMOUNT OF OUR DRAFT REPRESENTS FUNDS DUE AS A

RESULT OF THE FAILURE OF ASHFORD INTERNATIONAL, INC.

TO PERFORM AS TO THE TERMS OF THE CONTRACT

BETWEEN ASHFORD INTERNATIONAL, INC. AND THE

MINISTRY OF EDUCATION OF JORDAN CONTRACT NO.

(1/27/2000); LOAN NO. 3684-JO.

---

[1] Plaintiff states that the loan work-out procedures were a result of Ashford's default on its obligations to UPS under the Note and credit agreement.  ESUF ¶ 7.  To support its contention, plaintiff submits the declaration of Cheryl Acreneaux, an Ex-Im employee, averring as much.  Arceneaux Decl. ¶ 9.  Defendant objects to Acreneaux's assertion that Ashford defaulted, on the grounds that Acreneaux lacks personal knowledge of Ashford's default, Fed. R. Evid. 602, hearsay, Fed. R. Evid. 801, and the best evidence rule, Fed. R. Evid. 1002. UCDC's Statement of Genuine Issues of Material Fact ¶ 7. Because the Court does not rely on Acreneaux's assertion that Ashford defaulted on its obligations to UPS, the Court denies defendant's objection as moot.

[2] This arrangement was intended to provide security in the event that the UPS LOCs were drawn upon by the MOE, because UPS would have recourse by drawing on the UCDC LOCs.  ESUF ¶ 8.

UCDC LOCs at 1; Ex. G.  The UCDC LOCs also required "the original . . . letter of credit must accompany the documents at the time of presentation."  UCDC LOCs at 1; Ex. G.  On September 25, 2001, UCDC issued Amendment One to each of the UCDC LOCs, which provided in part:

> 1. DOCUMENT NUMBER ONE NOW READS
>
> THE AMOUNT OF OUR DRAFT REPRESENTS FUNDS DUE US AS
>
> A RESULT OF DRAWING OF OUR LETTER OF CREDIT BY
>
> ORDER OF ASHFORD INTERNATIONAL, INC. UNDER THE
>
> TERMS OF THE CONTRACT NO. (1/27/2000); LOAN NO. 3684-JO
>
> ISSUED BY MINISTRY OF EDUCATION - THE HASHEMITE
>
> KINGDOM OF JORDAN.

Amendment One at 1; Ex. H.

On April 29, 2003, UPS made a demand for payment to UCDC under each of the UCDC LOCs.  ESUF ¶ 18.  On May 9, 2003, UCDC issued a Notice of Dishonor rejecting UPS's demand for payment, citing discrepancies in UPS's draw application.[3] ESUF ¶ 19.  On May 14, 2003, UPS corrected the cited discrepancies in its original draw application and again presented the UCDC LOCs for draw.  ESUF ¶ 20.  UPS never presented the original UCDC LOCs to UCDC.  USUF ¶ 27.  UCDC failed to honor UPS's May 14, 2003 draw on the UCDC LOCs.  ESUF ¶ 22.

---

[3] UCDC's May 9, 2003 letter rejecting UPS's attempt to draw on the UCDC LOCs provides in relevant part:
> The subject drawings are dishonored due to the following discrepancies
> on each drawing:
> 1 - Draft is not drawn on United California Discount Corporation.
> 2 - The Language on beneficiary's statement is not as per Standby
> (amendment number one).

UCDC Notice of Dishonor at 1; Ex. K.  The parties agree that UCDC properly rejected UPS's April 29, 2003 demand for payment because the beneficiary statement submitted by UPS did not comply with the language of Amendment One.  ESUF ¶ 19.

UPS filed a claim with plaintiff under the Guarantee Agreement between UPS and plaintiff, which provided a guarantee to UPS in the event that Ashford defaulted.  ESUF ¶¶ 6, 15.  Upon payment of the claim, UPS assigned to plaintiff:

> all of its right title and interest in, and all sums of money now due or to become due to UPS[] under the Loan Agreement by and between UPS[] and Ashford International . . . and any and all other instruments and property incident to [Ashford's] indebtedness under the Loan, including but not limited to, security and/or guarantee agreements.

UPS Assignment to Ex-Im at 1; ESUF ¶ 15; Ex. M.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested.  See Fed. R. Civ. P. 56(c).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to

judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.    DISCUSSION

### A.    Plaintiff's Standing

As a preliminary matter, the Court must address defendant's contention that plaintiff does not have standing to assert its claims against UCDC.[4]  Def.'s Mot. at 9; Def's Opp'n at 19.  Defendant argues that because plaintiff was not a party to the UCDC LOCs, or any other agreement between defendant and UPS, plaintiff does not have standing to enforce the LOCs.  Id. (citing Gantman v. United Pac. Ins. Co., 232 Cal. App. 3d 1560, 1566 (Cal. Ct. App. 1991).  Defendant argues that under the International Chamber of Commerce's Guidelines for standby letters of credit ("ISP98")[5] and California Commercial Code § 5114(c),[6] UPS's assignment of the

---

[4]  While there is a question as to whether California law or federal common law governs this dispute, it appears that there is no material difference between the two. Defendant's do not suggest otherwise.

[5]  The UCDC LOCs state that they are "subject to ISP 98 590."  UCDC LOCs at 1; USUF ¶ 7; Ex. G.  The ISP98 provides in relevant part:

    a.    Unless applicable law otherwise requires, an issuer or nominated person

          i.    is not obligated to give effect to an assignment of proceeds which it has not acknowledged; and

        ii.    is not obligated to acknowledge the assignment.

(continued...)

UCDC LOCs to plaintiff confers no rights upon plaintiff unless defendant consents to the assignment.   Def.'s Mot. at 9–13; Def.'s Opp'n at 19–22.  Defendant argues that plaintiff cannot maintain this action on the grounds that plaintiff was assigned the UCDC LOCs because defendant never acknowledged the assignment.  Id.

Plaintiff asserts it has standing because UPS assigned to plaintiff all right, title, and interest to the Loan, and all other instruments and property incident to Ashford's indebtedness under the Loan, including but not limited to, security and/or guarantee agreements.  Pl.'s Opp'n at 6.  Plaintiff argues that UPS's assignment included UPS's claims against UCDC for wrongful dishonor of the UCDC LOCs.  Id.; Pl.'s Reply at 10.  Plaintiff argues that because UPS, the original beneficiary under the UCDC LOCs, demanded payment from UCDC there is no issue concerning the assignment of drawing rights.  Pl.'s Opp'n at 11. Thus, according to plaintiff, because UPS simply assigned to plaintiff the right to sue UCDC for wrongful dishonor of the UCDC LOCs, plaintiff has standing to assert its claims.  Id.; Pl.'s Reply at 10.

Defendant replies that the ISP98 does not permit an assignment of a claim for relief.  Def.'s Reply at 18–19; Def.'s Opp'n at 19–21.  Defendant argues that the ISP98 only permits UPS to either transfer its drawing rights or assign its proceeds. Def.'s Reply at 19; Def.'s Opp'n at 19–20.

The Court finds that UPS assigned to plaintiff the complete bundle of rights that UPS held as a result of Ashford's indebtedness to UPS, including UPS's rights

---

[5](...continued)
   b.    If an assignment is acknowledged:
       i.    the acknowledgment confers no rights with respect to the standby to the assignee who is only entitled to the proceeds assigned, if any . . . ."
ISP98 § 6.07(a)–(b).

[6] "An issuer or nominated person need not recognize an assignment of proceeds of a letter of credit until it consents to the assignment."  Cal. Com. Code § 5114(c).

relating to defendant's failure to honor the draft on the UCDC LOCs.[7]  Included within the bundle of rights assigned to plaintiff was UPS's right of action against defendant for wrongful dishonor of the UCDC LOCs.  See Cal. Civ. Code § 954 ("A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner.").  Plaintiff has standing to maintain this action as the assignee of UPS's claims for relief against defendant for wrongful dishonor of the UCDC LOCs.  See Bd. of Trade of S.F. v. Swiss Credit Bank, 728 F.2d 1241, 1242–43 (9th Cir. 1984) (holding that plaintiff had standing where the beneficiary of a letter of credit had assigned to plaintiff its cause of action for wrongful dishonor of the letter of credit).

Defendant's reliance on California Commercial Code § 5114 and provisions of the ISP98 is misplaced.  Those sections address the assignment of proceeds under letters of credit.  The Court need not reach the issue of whether an assignee of proceeds may sue the obligor directly because plaintiff is also the assignee of UPS's cause of action against UCDC.

Accordingly, the Court DENIES defendant's motion for summary judgment on the grounds that plaintiff does not have standing.

**B.      First and Second Claims—Wrongful Dishonor of Standby Letters of Credit and Breach of Contract[8]**

The cross-motions filed by plaintiff and defendant on the first and second claims raise the same issue: whether UPS's demand for payment under the UCDC

_____

[7]  The parties do not dispute that UPS assigned to plaintiff all of its right, title, and interest in the Loan and all other instruments and property incident to Ashford's indebtedness under the Loan, including but not limited to, security and/or guarantee agreements.  UPS Assignment to Ex-Im at 1; ESUF ¶ 15; Ex. M

[8]  Although there are certain substantive differences in the law governing an ordinary contract and a letter of credit, a claim for wrongful dishonor is nearly identical to a breach of contract claim.  Both claims require a showing of a breach of the obligations set out in the instrument.  Therefore, the Court will address these two claims together.

LOCs complied with the terms of the UCDC LOCs, obligating defendant to honor the draft.

### 1.    Whether Defendant Waived Any Defect in UPS's Failure to Present Defendant With the Original Letters of Credit

Defendant argues that it is entitled to summary judgment with respect to plaintiff's claims for wrongful dishonor of standby letters of credit and breach of contract because UPS failed to strictly comply with the express terms of the UCDC LOCs.  Def.'s Mot. at 13.  UCDC asserts that UPS failed to meet the term of the UCDC LOCs requiring that UPS present UCDC with the original letter of credit at the time of draw.  Id. at 14.

Plaintiff responds that UCDC waived any defect in UPS's failure to present UCDC with the original letters of credit at the time of draw under California Commercial Code § 5108[9] and the ISP98,[10] because UCDC never raised UPS's failure to present the original letters as a basis for dishonor.  Pl.'s Opp'n at 12–13.

Defendant replies that it never waived the presentment requirement because it was only obligated to inform UPS of any discrepancies in the documents that UPS

_____

[9]  "[A]n issuer is precluded from asserting as a basis for dishonor any discrepancy if timely notice is not given, or any discrepancy not stated in the notice if timely notice is given."  Cal. Com. Code § 5108(c).

[10]  The ISP98 states:
> Failure to give notice of a discrepancy in a notice of dishonour within the time and by the means specified in the standby or these rules precludes assertion of that discrepancy in any document containing the discrepancy that is retained or represented, but does not preclude assertion of that discrepancy in any different presentation under the same or a separate standby.

ISP98 § 5.03(a).

actually submitted at the time of draft.[11]  Def.'s Reply at 23.

The parties do not dispute that: (1) on April 29, 2003, UPS made a demand for payment under the UCDC LOCs; (2) on May 9, 2003, defendant rejected UPS's demand for payment citing discrepancies in UPS's draw, but not citing UPS's failure to present the originals; (3) on May 14, 2003, UPS cured the discrepancies cited by defendant in its original draw application and again made a demand for payment under the UCDC LOCs; (4) defendant did not object to UPS's failure to present the original UCDC LOCs as a basis for dishonoring UPS's May 14, 2003 demand for payment;[12] (5) defendant did not honor UPS's May 14, 2003 demand for payment.

Defendant was obligated to examine UPS's demand for payment to determine whether the draw "appear[ed] on its face strictly to comply with the terms and conditions of the letter of credit." Cal. Com. Code § 5108(a). Defendant then had a reasonable time, but not more than seven business days from the time it received UPS's demand for payment, to honor the demand or give notice to UPS of the discrepancies in its draft presentation. Cal. Com. Code § 5108(b).

The Court finds that because defendant omitted UPS's failure to present the original letters of credit as a basis for dishonor in its notices of discrepancies, it waived the defect as a grounds for dishonor. See Cal. Com. Code § 5108(c); see also

---

[11] Defendant also argues that plaintiff's opposition should be stricken for failing to use 14-point or larger font as required by Local Rule 11-3.1.1 and exceeding the 25 page limit set by Local Rule 11-6. The Court will consider defendant's brief, but admonishes defendant to adhere to all Local Rules.

[12] The parties dispute whether defendant sent a notice of dishonor in connection with UPS's May 14, 2003 draw on the UCDC LOCs. Plaintiff argues that defendant never sent a notice of dishonor, Pl.'s Opp'n at 12–13, while defendant argues that it issued a notice of dishonor on May 23, 2003. Def.'s Reply at 22–23 n.7. The dispute is irrelevant. The Court has reviewed defendant's May 23, 2003 communication, Ex. 29, and like its May 9, 2003 notice of dishonor, defendant does not cite UPS's failure to present the original letters of credit as a basis for dishonor.

Colo. Nat'l Bank v. Bd. of County Comm'rs, 634 P.2d 32, 41 (Colo. 1981) ("As a general rule, when an issuer of a letter of credit formally places its refusal to pay upon specified grounds, it is held to have waived all other grounds for dishonor.") (citations omitted); Integrated Measurement Sys., Inc. v. Int'l Commercial Bank, 757 F. Supp. 938, 947 (N.D. Ill. 1991) ("the doctrine enunciated in the case law [is] that any grounds for dishonor not stated in the original notice are waived").  Based on the foregoing, the Court concludes that defendant waived any defect in UPS's failure to present the original letters of credit as a basis for dishonoring the UCDC LOCs.

> **2.    Whether the Terms of the UCDC LOCs Require UPS to Show as a Condition Precedent to Payment that Ashford Did Not Perform Under the Terms of its Contract With the MOE**

Defendant asserts that it has no obligation to pay under the UCDC LOCs because UPS was required to show as a condition precedent to payment that Ashford did not perform under the terms of its contract with the MOE.  Def.'s Mot. at 15–17.  Defendant argues that the UCDC LOCs' reference to the underlying contract between Ashford and the MOE suggests that defendant is only obligated to honor drafts upon the UCDC LOCs if Ashford defaulted under its contract with the MOE.  Id. at 17.

Plaintiff argues that defendant's obligation to pay under the UCDC LOCs is independent of Ashford's contractual obligation to perform under its contract with the MOE.  Def.'s Opp'n at 13.  Plaintiff cites the well-established "independence principle" in letter of credit law for the proposition that defendant's liability to UPS on the letters is independent from Ashford's performance on the underlying contract.  Id. at 14–15 (citing San Diego Gas & Elec. Co. v. Bank Leumi, 42 Cal. App. 4th 928, 934 (Cal. Ct. App. 1996) ("[The] unique feature, referred to as the 'independence principle,' is the primary characteristic of a letter of credit. Absent fraud, the issuer must pay upon proper presentment regardless of any defenses the applicant for the letter of credit may have against the beneficiary arising from the underlying

transaction."); <u>Hamada v. Far E. Nat'l Bank</u> (<u>In re Hamada</u>), 291 F.3d 645, 650 (9th Cir. 2002); <u>Andy Marine, Inc. v. Zidell, Inc.</u>, 812 F.2d 534, 537 (9th Cir. 1987) ("We cannot turn to an underlying agreement in order to interpret a letter of credit unless references to the underlying agreement in the letter of credit explicitly create a condition for honoring a draft."); <u>Western Sur. Co. v. Bank of S. Or.</u>, 257 F.3d 933, 936 (9th Cir. 2001); <u>Slamans v. First Nat'l Bank & Trust</u>, 69 F.3d 468, 474 (10th Cir. 1995) (compiling authorities)).  Plaintiff asserts that defendant is obligated to pay solely upon a conforming demand under the terms of the UCDC LOCs and that the uncontroverted evidence shows that UPS made a conforming demand for payment. <u>Id.</u> at 15–20.

Defendant replies that the "independence principle" does not apply when a letter of credit references the terms of the underlying contract.  Def.'s Reply at 7; Def.'s Opp'n at 6–9 (citing <u>Newvector Commc'ns, Inc. v. Union Bank</u>, 663 F. Supp. 252, 257 (D. Utah 1987) (no liability for wrongful dishonor where "the beneficiary knowingly has not performed in accordance with the terms and conditions of the letter."); <u>Mitsui Mfrs. Bank v. Tex. Commerce Bank</u>, 159 Cal. App. 3d 1051, 1055–56 (Cal. Ct. App. 1984) (an explicit reference to the underlying contract in a letter of credit may create a condition for honoring the draft)).  Defendant replies further that Amendment One altered the language but not the substance of the parties' understanding that Ashford's failure to perform was an express condition of UPS's ability to demand payment on the UCDC LOCs.  Def.'s Reply at 9.

The parties do not dispute that the original UCDC LOCs contained the following demand term:

1. BENEFICIARY STATEMENT READING AS FOLLOWS:

THE AMOUNT OF OUR DRAFT REPRESENTS FUNDS DUE AS A RESULT OF THE FAILURE OF ASHFORD INTERNATIONAL, INC. TO PERFORM AS TO THE TERMS OF THE CONTRACT

1
2
3

> BETWEEN ASHFORD INTERNATIONAL, INC. AND THE
> MINISTRY OF EDUCATION OF JORDAN CONTRACT NO.
> (1/27/2000); LOAN NO. 3684-JO.

4
5

UCDC LOCs at 1; Ex. G.  The parties do not dispute that UCDC subsequently issued Amendment One to each of the UCDC LOCs, which provided in part:

6
7
8
9
10
11
12
13

> 1. DOCUMENT NUMBER ONE NOW READS
>
> THE AMOUNT OF OUR DRAFT REPRESENTS FUNDS DUE US AS
> A RESULT OF DRAWING OF OUR LETTER OF CREDIT BY
> ORDER OF ASHFORD INTERNATIONAL, INC. UNDER THE
> TERMS OF THE CONTRACT NO. (1/27/2000); LOAN NO. 3684-JO
> ISSUED BY MINISTRY OF EDUCATION - THE HASHEMITE
> KINGDOM OF JORDAN.

14
15
16

Amendment One at 1; Ex. H.[13]  The parties do not dispute that on May, 14, 2003, UPS issued a draft upon the UCDC LOCs including the requisite beneficiary statement provided for in Amendment One.  Ex. M.

17
18
19
20
21
22

A standby letter of credit is a commercial instrument that obligates the issuer to pay upon a demand by the beneficiary that conforms to the terms of the letter of credit.  Andy Marine, 812 F.2d at 536.  The purpose of the letter of credit is to "enable the beneficiary to collect money to which it believes itself entitled and to hold such sums while any disputes are pending."  Id. at 537 (citing Itek Corp. v. First Nat'l Bank of Boston, 730 F.2d 19, 24 (1st Cir. 1984)).  Letters of credit achieve this

23
24
25
26
27
28

---

[13]  The parties contest whether Anne Janangelo, the UPS official responsible for negotiating the terms of the UCDC LOCs on behalf of UPS, understood Amendment One to condition UPS's ability to draw on the UCDC LOCs upon Ashford's default on its contract with the MOE.  Def.'s Mot. at 20–22; Def.'s Reply at 6; Pl.'s Opp'n at 18; Pl.'s Reply at 3.  Because the Court finds the language of the UCDC LOCs and Amendment One to be clear, the Court does not rely on Janangelo's and other third parties' interpretation of the language.

purpose by de-linking the letter of credit from the underlying contract.  This concept is known as the "independence principle," and is the "primary characteristic of a letter of credit."  San Diego Gas & Elec., 42 Cal. App. 4th at 934.  In the absence of explicit language tying the letter to the underlying contract, "it defeats the whole purpose of the letter of credit to examine the rights and wrongs of a contract dispute to determine whether the letter should be paid."  Andy Marine, 812 F.2d at 537; see Western Sur. Co., 257 F.3d at 936 ("generally the court must look only to the terms of the letter without regard to those in the underlying transaction"); see also John F. Dolan, The Law of Letters of Credit: Commercial and Standby Credits § 2.09[5][a], 2-70 (4th ed. 2007) ("to the extent courts begin delving into the underlying contract, they are impeding the swift completion of the credit transaction.").  Thus, the independence principle in letters of credit law limits the Court's review of the UCDC LOCs to its terms unless there is explicit language in the letters conditioning a draw upon the UCDC LOCs on Ashford's default under its contract with the MOE.

The Court finds that Amendment One's general reference to the contract between Ashford and the MOE is insufficient to create an explicit condition precedent for payment under the UCDC LOCs.  The Court is unconvinced by defendant's argument that Amendment One altered only the language, and not the substance, of the UCDC LOCs.  Defendant's argument runs counter to the plain language of the amendment and the purpose of standby letters of credit by making the UCDC LOCs dependent on Ashford's underlying contract with the MOE, and the dispute over whether Ashford fulfilled its obligations to the MOE.

The Court is also not persuaded by defendant's contention at oral argument that defendant's rejection of the amending language initially proposed by UPS indicates that Amendment One reincorporated the terms of the underlying contract between Ashford and the MOE.  In particular, defendant points to an e-mail sent by a UPS official to defendant providing:

The drawing language on both letter [sic] of credit should be amended to read:

"Beneficiary's statement certifying: The amount of our draft represents funds due us as a result of the Ashford International, Inc. - Jordan letter of credit being drawing [sic] upon."

See Ex. 23.  Defendant argues that the rejection of this proposed language demonstrates that Amendment One was intended to condition payment on the UCDC LOCs on a breach of the underlying contract between Ashford and the MOE.  The Court disagrees.  First, it appears that nothing in the agreed-upon language of Amendment One conditions payment on Ashford breaching the underlying contract. All the rejection and Amendment One do is make clear that UPS would be entitled to draw upon the UCDC LOCs if the MOE demanded payment on the UPS LOCs. Moreover, the Court finds that defendant has failed to present "clear evidence" that the parties intended that Ashford's default on its contract with the MOE was a condition precedent for UPS to draw upon the UCDC LOCs.  See Andy Marine, 812 F.2d at 537 ("In the absence of clear evidence that the parties intended the letter to include nondocumentary conditions, it defeats the whole purpose of the letter of credit to examine the rights and wrongs of a contract dispute to determine whether the letter should be paid.").

Defendant's reliance on the California Court of Appeal's decision in Mitsui is equally unavailing.  Mitsui, 159 Cal. App. 3d at 1054–56.  In Mitsui, the court enjoined a beneficiary of a letter of credit from drawing upon the letter because the beneficiary could not satisfy an express term contained in the letter requiring the beneficiary to state that a borrower had failed to repay "loans drawn . . . in connection with drilling of oil wells."  Id. at 1054.  The record before the court made clear that the beneficiary of the letter could not make such a statement without committing fraud because the beneficiary knew that the loans were not used for drilling oil wells.

See id.

In this case, unlike Mitsui, UPS satisfied the terms contained in the UCDC LOCs.  To demand payment on the UCDC LOCs, UPS was only required to submit a beneficiary statement indicating that it was due funds "as a result of drawing of [the UPS LOCs] by order of [Ashford] under the terms of the contract [between the MOE and Ashford]."  UPS was not required to include a statement certifying that Ashford had actually breached its contract with the MOE.  Indeed, the thrust of Amendment One was to make the UCDC LOCs independent of Ashford's obligations on its contract with the MOE by removing the language in the original beneficiary statement that funds were due to UPS "as a result of the failure of [Ashford] to perform."  Further, at the time UPS attempted to draw on the letters, it could not have known that Ashford may have satisfied its obligations to the MOE because there was an ongoing dispute as to performance between the MOE and Ashford.  Thus, when UPS demanded payment under the UCDC LOCs, it complied with the express terms of the UCDC LOCs.  See Trans Meridian Trading Inc. v. Empresa Nacional de Comercializacion de Insumos 829 F.2d 949, 957 (9th Cir. 1987) (distinguishing Mitsui on similar grounds); see also Ground Air Transfer, Inc. v. Westates Airlines, Inc., 899 F.2d 1269, 1274 (1st Cir. 1990) ("The Mitsui court enjoined a beneficiary of a letter of credit from calling that letter, but it did so because it believed that the beneficiary could not satisfy a term *contained in the letter itself*") (emphasis in original).

Thus, the Court finds that because the effect of Amendment One was to make the letters of credit independent of Ashford's performance on the underlying contract, the reference to the transaction between Ashford and the MOE was not a relevant condition for payment under the UCDC LOCs.  See Andy Marine, 812 F.2d at 537 (parties' "general references to the underlying . . . agreement" did not create a condition for honor); Pringle-Assoc. Mortgage Corp. v. S. Nat'l Bank, 571 F.2d 871,

875 (5th Cir. 1978); <u>W.Va. Hous. Dev. Fund v. Sroka</u>, 415 F. Supp. 1107, 1111–12 (W.D. Pa. 1976) (language in the letter of credit that letter "relates to" a project is "simply not strong enough" to create a condition and is "merely a recital of the reason the letter of credit [is] required."). Based on the foregoing, the Court finds that Ashford's default on its contract with the MOE was not a condition precedent to payment under the UCDC LOCs.[14]

### 3. Whether the Fraud Exception to the "Independence Principle" Applies

Defendant argues for the first time in its reply that even if the Court finds that the letters should be enforced independently of Ashford's contract with the MOE, the fraud exception to the "independence principle" applies because UPS had no legitimate basis for asserting a claim under the UCDC LOCs. Def.'s Reply at 3, 13–18; Def.'s Opp'n at 14–19.

Plaintiff replies that defendant's reliance on the fraud exception is both procedurally and substantively flawed. Pl.'s Reply at 4. Plaintiff argues that defendant's fraud argument is procedurally improper under Fed. R. Civ. P. 8(c)[15] and 9(b)[16] because defendant failed to specifically plead fraud in its answer. <u>Id.</u> at 4–5. Plaintiff further asserts that the fraud exception is inapplicable in this case because UPS committed no fraud in attempting to draw upon the UCDC LOCs. <u>Id.</u> at 8.

---

[14] Defendant asks the Court to take judicial notice of various rulings of Jordanian tribunals pertaining to arbitration between Ashford and the MOE. <u>See</u> Fed. R. Evid. 201. The Court finds that defendant's motion is moot because Ashford's performance under its contract with the MOE is not a condition to the UCDC LOCs.

[15] Requiring a party to state the affirmative defense of fraud. Fed. R. Civ. P. 8(c).

[16] Requiring a party to plead fraud or mistake with particularity. Fed. R. Civ. P. 9(b).

Defendant may dishonor UPS's demand for payment on the UCDC LOCs if UPS's demand was "forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant." Cal. Com. Code § 5109(a). A material fraud occurs where the underlying contract "deprives the beneficiary of even a 'colorable' right to" draw upon the letter of credit. Ground Air Transfer, Inc., 899 F.2d at 1273 (citing Itek Corp., 730 F.2d at 25).

Here, defendant does not present admissible evidence to suggest that UPS engaged in active fraud in connection with its attempted draws on the UCDC LOCs. Similarly, defendant does not present admissible evidence that the MOE engaged in active fraud in drawing upon the UPS LOCs or that UPS believed that its letters were fraudulently drawn upon. The limited facts available to the Court on this point are more indicative of a dispute as to performance between the MOE and Ashford than of material fraud. Moreover, to the extent defendant asks the Court to apply the rationale of the fraud exception despite the absence of evidence indicating fraud by any party, the Court declines to do so. Applying the fraud exception where there is no evidence of fraud would eviscerate the "pay-now, argue-later" function of a letter of credit, and create an "argue-now, pay later" obligation that would "transmutate[] the letter of credit, an independent obligation, into a bond or secondary obligation." See Dolan, The Law of Letters of Credit at § 7.04[4][d], 7-112.

### 4.    Whether Defendant Has Any Colorable Affirmative Defenses

Defendant argues that plaintiff's cross-motion for summary judgment should be denied because plaintiff has not addressed defendant's affirmative defenses. Def.'s Opp'n at 23–24. Plaintiff counters that it is not plaintiff's responsibility to address defendant's affirmative defenses, and that it is defendant's obligation to brief any defenses it has in opposition to plaintiff's summary judgment motion. Pl.'s Reply at 10–11.

The Court finds that plaintiff has met its burden of showing that defendant

wrongfully dishonored the UCDC LOCs.  It is then defendant's obligation to identify specific facts demonstrating that there is a genuine issue of material fact on the issue. Defendant must do more than simply rely on the affirmative defenses pled in its answer.  See Celotex, 477 U.S. at 323 (the court should grant summary judgment "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.").  The Court finds that defendant failed to identify any affirmative defenses demonstrating that there is a genuine issue of material fact on whether defendant wrongfully dishonored the UCDC LOCs.

To summarize, the Court finds that: (1) defendant waived any defect in UPS's failure to present defendant with the original letters of credit at the time UPS demanded payment under the UCDC LOCs; (2) Ashford's default on its contract with the MOE was not a condition precedent to payment under the UCDC LOCs; (3) the fraud exception to the "independence principle" is inapplicable in this case; (4) defendant has failed to identify any affirmative defenses demonstrating that there is a genuine issue of material fact on whether defendant had grounds to dishonor the UCDC LOCs .  The Court further finds that because UPS issued a conforming demand for payment under the terms of the UCDC LOCs on May 14, 2003, and defendant had no legitimate basis upon which to refuse to honor UPS's draft, defendant wrongfully dishonored UPS's draw on the letters.

Accordingly, the Court DENIES defendant's motion for summary judgment and GRANTS plaintiff's motion for summary judgment on the first and second claims for wrongful dishonor of standby letters of credit and breach of contract.

## C.      Third Claim—Unjust Enrichment

Defendant argues that it is entitled to summary judgment on plaintiff's third claim for unjust enrichment because California courts do not recognize unjust enrichment as a cause of action.  Def.'s Mot. at 23; Def.'s Reply at 23.  Plaintiff does

not challenge this assertion in its submissions to the Court.

Unjust enrichment is not a claim for relief per se, but a "general principle underlying various legal doctrines and remedies" that is synonymous with restitution. Rosal v. First Fed. Bank of Cal., 671 F. Supp 2d. 1111, 1133 (N.D. Cal. 2009) (citing Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003). A court may award restitution under an unjust enrichment theory in two scenarios: (1) the parties express contract was procured by fraud or is otherwise unenforceable for some reason or (2) the defendant extracted a benefit from plaintiff by fraud, duress, conversion, or similar conduct.  McBride v. Boughton, 123 Cal. App. 4th 379, 388 (Cal. Ct. App. 2004).  In such cases, courts imply a "quasi-contract" to avoid unjust enrichment.  Id.

The Court finds that because the UCDC LOCs were binding and enforceable agreements defining the rights and obligations of UPS and defendant, plaintiff cannot maintain a claim for unjust enrichment.  See Rosal, 671 F. Supp. 2d at 1113 ("a claim for restitution is inconsistent and incompatible with a related claim for breach of contract"); see also Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) ("Under . . . California . . . law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties.").

Accordingly, the Court GRANTS defendant's motion for summary on plaintiff's third claim for unjust enrichment.

### D.   Pre-Judgment Interest

Plaintiff argues that in addition to the principal amounts of the dishonored UCDC LOCs, it is entitled to an award of prejudgment interest in the amount of $225,833.92 for the lost time value of the money that should have been paid in 2003. Pl.'s Mot. at 22 (citing Motorola, Inc. v. Fed. Exp. Corp., 308 F.3d 995, 1005 n.9 (9th Cir. 2002) ("Prejudgment interest is widely recognized by federal courts as a means

to restore to a plaintiff the actual value of damages where there has been a delay between the time of injury and the date of judgment.")).  Plaintiff argues that because the parties did not fix the rate of prejudgment interest in advance, the rate should be determined by reference to 28 U.S.C. § 1961(a).[17]  Id. at 23.  Although 28 U.S.C. § 1961(a) only provides for  postjudgment interest, plaintiff argues that it is also appropriate for the Court to use section 1961(a) to calculate prejudgment interest.  Id. (citing Columbia Brick Works, Inc. v. Royal Ins. Co. of Am., 768 F.2d 1066, 1071 (9th Cir. 1985) ("We have determined that the measure of interest rates prescribed for postjudgment interest in 28 U.S.C. § 1961(a) is also appropriate for fixing the rate for prejudgment interest unless the equities of a particular case demand a different result.")).

Defendant does not appear to contest plaintiff's assertion that it is entitled to prejudgment interest; rather, defendant argues that plaintiff applies the incorrect interest rate in its calculation of the amount of interest it is owed.  Def.'s Opp'n at 24–25.

The Court finds that plaintiff is entitled to an award of prejudgment interest from the date of defendant's wrongful dishonor of UPS's conforming demand for payment under the UCDC LOCs.  See Cal. Com. Code § 5111(b) ("If an issuer wrongfully dishonors a draft or demand presented under a letter of credit . . . the applicant may recover damages resulting from the breach, including incidental but not consequential damages, less any amount saved as a result of the breach."); see also Jamison v. Jamison, 164 Cal. App. 4th 714, 721 (Cal. Ct. App. 2008)

---

[17]  "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . .  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."  28 U.S.C. § 1961(a).

(prejudgment interest is authorized if the damages are certain or capable of being made certain by calculation); <u>Data Gen. Corp v. Citizens Nat'l Bank</u>, 502 F. Supp 776, 789 (D. Conn. 1980) (prejudgment interest at the statutory rate begins to run from the date of the draft's wrongful dishonor).  As discussed above, the Court finds that UPS made a conforming demand for payment on May 14, 2003, and defendant wrongfully dishonored on May 23, 2003.  Thus, plaintiff is entitled to prejudgment interest on the principal amount of $660,209.60 from May 23, 2003.

The Court finds, however, that the calculation plaintiff submits is not supported by law.  It appears that plaintiff uses an incorrect interest rate in calculating its prejudgment interest.  The Court directs plaintiff to compute prejudgment interest as of May 23, 2003, based upon the principal amount of $660,209.60, and to use "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System." 28 U.S.C. § 1961(a).

Accordingly, plaintiff is directed to re-calculate prejudgment interest in accordance with this order and to submit a proposed judgment within fourteen (14) days after the filing of this order.  Defendant shall have five (5) days after submission of the proposed judgment to file any objections to the manner in which interest has been calculated.

## V.    CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS in part and DENIES in part plaintiff and defendant's motions for summary judgment.  Specifically, the Court:

- Finds that plaintiff has standing to assert its claims against defendant as the assignee of UPS's cause of action against defendant.

- GRANTS plaintiff's motion for summary judgment on its first claim for wrongful dishonor of standby letters of credit.

1

2
-        GRANTS plaintiff's motion for summary judgment on its second claim for breach of contract.

3

4
-        GRANTS defendant's motion for summary judgment on the third claim for unjust enrichment.

5

6

7
-        Finds that plaintiff is entitled to an award of prejudgment interest, and orders plaintiff to re-calculate prejudgment interest in accordance with this order and to submit a proposed judgment to the Court.

8
IT IS SO ORDERED.

9

10

11

12
Dated: August 31, 2010

13
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28